**LAW et al. v. SMITH, Dam Gatekeeper, et al.**

(Circuit Court of Appeals, Ninth Circuit. April 2, 1923.)

No. 3850.

1. **Evidence ⊙➡10(5)—Judicial notice taken of topography of Lake Tahoe.**
    The court will take judicial notice of the fact that Lake Tahoe is in the Sierra Nevada Mountains, that it is about 21 miles long, and from 8 to 12 miles wide, and lies at an altitude of about 6,225 feet above sea level.

2. **Limitation of actions ⊙➡32(3)—Two-year limitation applies to action for overflowing lands.**
    An action by property owners for damages caused by the overflow of their lands as a result of the maintenance and operation of a reclamation service dam is in the nature of trespass on the case, and must be commenced within two years, under the provisions of Code Civ. Proc. Cal. §

⊙➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

339; the limitation of section 338 for trespass to real property having no application.

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Four separate actions at law by Hartland Law and others, here consolidated, against Arthur L. Smith, dam gatekeeper, and others, officers and employees of the United States, to recover damages for raising the waters of Lake Tahoe, to the injury of plaintiffs' lands, riparian to the lake, removed by defendants from the state court. Decree for defendants, and plaintiffs bring error. Affirmed.

John E. Bennett, Oliver Dibble, and F. W. Sawyer, all of San Francisco, Cal., for plaintiffs in error.

John T. Williams, U. S. Atty., E. M. Leonard, Asst. U. S. Atty., and Henry A. Cox, Dist. Counsel U. S. Reclamation Service, all of San Francisco, Cal., for defendants in error.

Before MORROW and HUNT, Circuit Judges, and DOOLING, District Judge.

MORROW, Circuit Judge. Plaintiffs in error were the plaintiffs in the court below, and Arthur L. Smith was the only defendant served with summons. These four suits were originally brought in the state court, and removed to the United States District Court upon petitions of the defendant Smith, showing that the suits were brought to recover damages from the defendants for acts which, if done as alleged, he performed solely by virtue of his authority as an employee, agent, officer, or servant of the United States and under the supervision and direction of the Secretary of the Interior.

The complaints were filed in June, 1919. They allege the ownership of land and improvements on the shore of Lake Tahoe, and charge that on or about the 30th day of June, 1916, the defendants were in possession of and were operating a certain dam at the mouth of Lake Tahoe in the state of California, which dam was provided with gates capable of controlling the waters and levels of said lake; that defendants then and there shut down said gates, and thereby caused the surface of said lake to rise to a great height, to wit, 6,229.80 feet above sea level, as a result of which raise of the lake's surface, the structures and improvements of the plaintiffs upon their lands were, by the action of the waters of the lake, washed out and otherwise greatly damaged.

The defendant Smith answered, alleging in substance, among other things, that he was, at the times mentioned in the complaints, and then was, employed by the United States in the Reclamation Service thereof, as "gatekeeper" or "gatetender" in connection with the operation and maintenance of the dam and outlet gates mentioned in the complaints, and that ever since the 4th day of June, 1915, an exclusive and perpetual easement and right of possession, use, and enjoyment

in said dam and gates, and the property on which they are placed, at or near the outlet of Lake Tahoe, a navigable interstate lake lying partly in California and partly in Nevada, was then and had been owned by the United States, and the said dam and gates then were and had been operated and maintained by the United States under and in pursuance of the Constitution of the United States, the act of Congress approved June 17, 1902 (32 Stat. 388 [Comp. St. § 4700 et seq.]), entitled "An act appropriating the receipts from the sale and disposal of public lands in certain states and territories to the construction of irrigation works for the reclamation of arid lands," and acts amendatory thereof and supplementary thereto, and other applicable Congressional acts; that the United States, through itself and its predecessors in interest, had acquired and then owned the right, privilege, and easement to regulate said lake, and to raise the level thereof, by prescription as against plaintiffs' lands described in the complaints, and to overflow said lands by that means; that they had so regulated said lake continuously and raised the level of said lake upon the lands described in said complaints, against and adversely to the owners thereof and all those having an interest therein, including the plaintiffs and their predecessors in interest, and had in that way and by that means overflowed said lands continuously and whenever required in connection with the storage operations and regulation of said lake, for a period of more than five years prior to the commencement of these actions, and for a period of more than five years prior to the date set forth in the complaints of the alleged injury to plaintiffs' lands; and during all of said period they had been in the actual occupation, possession, use, and enjoyment of said right, privilege, and easement, openly, notoriously, and peaceably, and not clandestinely, adversely, and in hostility to plaintiffs' title and claim of title, and under a claim of right and title, exclusive of any other right, and as their own, and with notice to, and with the knowledge of, plaintiffs and their grantors and predecessors in interest, and uninterruptedly and continuously in connection with the storage operations and regulation of said lake.

[1] The court will take judicial notice of the fact that Lake Tahoe is in the Sierra Nevada Mountains; that it is about 21 miles long, and from 8 to 12 miles wide, and lies at an altitude of about 6,225 feet above sea level.

The cases were tried before the court and a jury. Defendants objected to any evidence of damage prior to June 24, 1917. The court, applying the statute of limitations of two years, sustained the objection. The plaintiffs announced that they could not proceed unless they were permitted to introduce evidence of damages sustained by them in 1916. Defendants thereupon moved for a nonsuit, which was granted. As these four cases have been consolidated, we will refer to them as one case. Plaintiffs came here upon writs of error.

Section 335 of the California Code of Civil Procedure provides for periods of limitation for the commencement of actions other than for the recovery of real property as follows:

"Sec. 338. Within three years: * * *

"2.—An action for trespass upon real property. * * *

"Sec. 339. Within two years:

"1. An action upon a contract, obligation or liability *not founded upon an instrument of writing.* * * *"

The question is: Was the act of the defendant in shutting down the gates of the dam and raising the water in the lake, to the damage of the plaintiffs, trespass upon real property, as provided in section 338 of the Code of Civil Procedure? Or, if actionable at all, was it a liability not founded upon an instrument·in writing and barred by the limitation of two years, as provided in section 339 of the Code of Civil Procedure?

As there is but one form of civil action in California (section 307, Code of Civil Procedure), we are not greatly concerned about the form of the action; but the question is: What was the cause of action, if any, as set forth in the pleadings and evidence? Was it the invasion of a private right, for which a redress has been provided by statute? If so, what are the terms of such statute? To determine this question, the classification of common-law actions which the Legislature must have had in mind when it framed the statute may be consulted as authority.

The plaintiffs cite the case of Conniff v. San Francisco, 67 Cal. 45, 49, 7 Pac. 41, as such an authority. In that case the action was against the city and county of San Francisco for damages caused by an embankment erected by that municipality in grading one of its streets. The embankment was formed 15 feet above the plaintiff's property and contiguous lots, by which the water that ran in a water course, crossing the street, was permanently stopped in its flow, and backed upon plaintiff's lot, causing damage to it and the building thereon. The street was thus made in accordance with the specifications furnished by the superintendent of streets and under his direction and to his satisfaction.

One of the questions involved in the case was whether an action could be sustained against the city and county for the invasion of a private right incidental to the prosecution of a public work duly authorized by statute. It was contended on behalf of the city and county that the injury was damnum absque injuria. But it appeared that the superintendent of streets had neglected and failed to have a culvert made in this embankment by which the water which flowed in the water course mentioned would have been carried off, which neglect and failure it was charged constituted a want of skill and neglect on the part of·the superintendent of streets in the construction of the embankment. It was contended on behalf of the municipality that it was not answerable for the acts and omissions of its officers. The plaintiff contended that public works must be executed with proper care and·skill, and, if so executed, it was admitted that damages resulting therefrom were generally damnum absque injuria; but if carelessly or unskillfully executed, and damage resulted to the citizen, a right of action would always lie.

In sustaining plaintiff's right of action, the court cited the case of Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L. Ed. 557. That was

an action in the state of Wisconsin for trespass on the case, and not trespass upon real property. The difference between the two causes of action is substantially the difference between section 338 and section 339 of the California Code of Civil Procedure; the first providing a cause of action the form of which, at common law and in many of the states, is designated as "trespass on the case," and the other charging "trespass upon real property." Upon this difference, the action in Wisconsin was rightfully brought in Pumpelly v. Green Bay Co., and it still might be barred by section 339, if brought in this state.

But in Conniff v. San Francisco the court sustained the action under the three-year limitation of section 338, holding that the case was a trespass upon real property, for the reason that the damages sustained by plaintiff were not the result of grading the street in a lawful mode to the modified levels, but the result of the mode of performing the work in a manner not authorized by law; that in the absence of valid legislative authority the defendant had no right to erect an embankment across a natural water course in such a manner as to obstruct its natural flow and cause the water therein to overflow and permanently remain on plaintiffs' land.

That is not this case; for in the present case the raising of the water at the outlet of the lake by the defendant, acting as an employee of the United States, was in connection with the operation and maintenance of the dam and outlet gates by the United States for the direct purpose and effect of raising water at the outlet of the lake for the irrigation and reclamation of public arid lands, as authorized by the act of Congress approved June 17, 1902. There is no pretense that there had been any neglect or omission on the part of the employees of the United States in the erection and maintenance of the dam, or that the raising of the water at the outlet of the lake was the result of neglect or want of skill or care on the part of such employees in operating the dam. On the other hand, it was the indirect and consequential result which is the subject of plaintiffs' complaint, the form of which, at common law, was "trespass on the case."

It is plain that neither Conniff v. San Francisco nor Pumpelly v. Green Bay Co. determine the question we have under consideration, while in the later case of Hicks v. Drew, 117 Cal. 305, 49 Pac. 189, the precise question was before the court and determined in a well considered opinion. In that case the action was for an injury to the land of the plaintiff, as the result of the erection of a bulkhead by the defendant on his land, which prevented storm water from flowing naturally across the lands of plaintiff, and caused it to overflow and to make gullies in plaintiff's land.

The court cites the case of Perrine v. Bergin, 14 N. J. Law, 355, 27 Am. Dec. 63, as stating a phase of the law applicable to this question. In this last case, the lands of the upper owner upon the stream were overflowed by the dam of the lower owner. The New Jersey court said:

"So far from being an ouster, it is not even a trespass, to flow the land of another with water by erecting a dam below his land, for the act in itself is

lawful. Every man may build a da___, by common right, on his own land, and trespass never lies when the act is lawful in itself, and injurious only in its consequences. * * * It is therefore no dispossession, no ouster, nor even a trespass, to flow water backwards on another person's land; it is denominated in law a nuisance, and annoyance to the tenant in possession, and his only modern remedy is by an action on the case, founded on his possession."

[2] In its opinion, the Supreme Court of California refers to previous cases in that court upon the general subject, among others the case of Conniff v. San Francisco, supra, but holds that the facts of the case before the court did not bring it within the doctrine of that case. The conclusion of the court, as expressed in the syllabus of the opinion, was that the action was not in the nature of a trespass upon real property of the plaintiff within the limitation of three years provided for in section 338 of the Code of Civil Procedure, but in the nature of an action upon the case at common law to recover damages for a consequential injury, and was subject to the limitation of two years provided for in section 339 of that Code.

The law as declared in this case has been followed by the Supreme Court in this state in Daneri v. Southern California Railway Co., 122 Cal. 507, 508, 55 Pac. 243, Crim v. San Francisco, 152 Cal. 279, 282, 92 Pac. 640, and Porter v. Los Angeles, 182 Cal. 515, 521, 189 Pac. 105. These decisions, we think, definitely settle the question in this state, and are applicable to the question presented in this case.

The action not having been brought within two years, as provided in section 339 of the Code of Civil Procedure, it is barred.

It follows that the decree of the District Court was correct, and should be affirmed; and it is so ordered.